## SOUTHERN SURETY CO. et al. v. MARTIN. (No. 12111.)

Court of Civil Appeals of Texas. Fort Worth. April 13, 1929.

Horace C. Bishop, of Dallas, for appellants.
Cantey, Hanger & McMahon, of Fort Worth, for appellee.

CONNER, C. J. This is an appeal from the district court of Tarrant county, awarding appellee a judgment for $6,593.79 as a lump sum compensation for total disability or incapacity to work resulting from an injury sustained by him in the course of his employment by Southwell & Abbott, a partnership, under the terms and provisions of the Workmen's Compensation Law of the state of Texas.

The case appeared in the district court upon an appeal from a previous award of the Industrial Accident Board, with which the appellant surety company refused to comply. The fact that appellee's injury, if any, was sustained during the course of his employment by Southwell & Abbott, for which the surety company was insurer, is not disputed, nor is the regularity of the proceedings under the compensation law which confers jurisdiction upon the district court questioned, so that we need only concern ourselves with the proceedings of the district court as presented by the record in this appeal.

The incapacitating injury which the jury found to be permanent resulted, as alleged and found, from "an aneurism of the arch of the aorta," which was thus described by one of the physicians, to wit: "An aneurism is an abnormal dilation of the blood vessel. * * * The aorta is the main blood vessel that goes out from the heart. You have the aorta and you have an arch here where it swings down and as it swings down, that is known as the arch of the aorta. To use plain ordinary language that everybody can understand, Mr. Martin had a weakened place in this blood vessel. It is a condition like a weakened place in an inner tube in a tire when it is pumped up to a certain pressure, except that in the case of the aneurism, it stays out there; it does not go out and come in, it stays out."

The case in the district court was submitted to a jury on special issues, upon the answers to which the judgment mentioned was rendered. Appellant's appeal has been duly prosecuted, and some 31 assignments of error are urged in appellant's propositions. Each has been examined, and we find but one which in the light of the criticisms made is likely to occur upon another trial, or merits discussion.

The facts show that appellee began work for Southwell & Abbott about July 5, 1926, and that he was injured and left their employment on or about August 27, 1926; that he was injured while operating an Austin trenching machine. He alleged that he "worked in such capacity and employment for six days each week at an average weekly wage of $50; that his annual wage as defined in said Workmen's Compensation Law was an average of $2,600, and his average weekly wage as defined by said act was $——; that by reason and on account of his said permanent, total incapacity, he is entitled under said act to 60 per cent. of said average, not to exceed $20 per week, for 401 weeks from the 27th day of August, A. D. 1926, as compensation for his said injuries."

The court's ninth special issue was: "What do you find from the evidence was the average daily wage of the plaintiff, J. E. Martin, at the time and before he was injured, if you find that he was injured?" To this issue the jury answered: "$8.33⅓."

The only evidence relating to this subject was the testimony of appellee, Martin, to the effect that while working for Southwell & Abbott he received $50 per week; that previously thereto he had worked for railroad companies as brakeman and as conductor; also for the Buick Auto Company; for the government during the war, etc. But the only testimony relating to his wage or that of others while working in the various capacities just mentioned was that "when I (Martin) worked for the railroad company, I drew the scale." What the scale was does not appear. Nor was it made to appear that appellee ever worked with a trenching machine before; or what wages were customarily received by those who did so work. Appellant insists that the evidence relating to appellee's average weekly wages is insufficient to support the judgment, and we have finally concluded that this assignment must be sustained.

Section 10 of article 8306, Workmen's Compensation Law, reads as follows:

"While the incapacity for work resulting from the injury is total, the association shall pay the injured employe a weekly compensation equal to sixty per cent of his average weekly wages, but not more than $20.00 nor less than $7.00 and in no case shall the period covered by such compensation be greater than four hundred and one weeks from the date of the injury."

Article 8309 of the same law defines the term "average weekly wages," as follows:

"1. If the injured employe shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employe shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employe of the same class working substantially the whole of such immediately preceding year in the same or a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employe, or other employe engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties.

"4. Said wages shall include the market value of board, lodging, laundry, fuel, and other advantage which can be estimated in money, which the employe receives from the employer as part of his remuneration. Any sums, however, which the employer has paid to the employe to cover any special expenses entailed on him by the act of his employment shall not be included.

"5. The average weekly wages of an employe shall be one fifty-second part of the average annual wages."

It appearing that appellee had not been engaged at work with his employers with a trenching machine the whole of the year immediately preceding the injury, it seems evident that his case does not fall within paragraph 1 of the definition given of average weekly wages; nor was the issue submitted by the court applicable to paragraph 3, 4, or 5 of said definition. The only paragraph for the computation of appellee's weekly wages is that found in paragraph 2 of the definitions just quoted.

In the case of Texas Employers' Ins. Ass'n v. Fitzgerald, 296 S. W. 509, by Section B of the Commission of Appeals, approved by our Supreme Court, it is said, quoting from the headnote:

"Where pleading in employee's action for injuries alleged that employee at time of injury was engaged for only period of about six or seven months prior thereto, and set out his average weekly wage during such term, there was no basis for special issue submitting average weekly wage, and finding thereon cannot be made basis of Judgment, in that it constituted an answer to an issue that was not made by pleadings."

In the case of Texas Employers' Ins. Ass'n v. Villarreal, 1 S.W.(2d) 692, the Galveston Court of Civil Appeals held that where an employee had been working for an employer for only seven months at the time of the injury, compensation could not be computed on basis of his weekly wage, but was to be computed on basis of average wage earned by other employees of the same class working substantially the whole of the year preceding the injury in the same or similar employment in the same or a neighboring place, under the Workmen's Compensation Act, article 8309, first and second subdivisions.

In Federal Surety Co. v. Shigley, 7 S.W. (2d) 607, the Amarillo Court of Civil Appeals held that a judgment for compensation at the rate of $20 per week was without a legal basis, in the absence of a finding of the average wage based on employment of defendant, as required by article 8309. Of like effect is the case of Zurich General Accident & Liability Ins. Co. v. Wood, 10 S.W.(2d) 760, also by the Amarillo Court of Civil Appeals.

Appellee insists, in substance, that inasmuch as there was no demurrer to his allegation relating to his average weekly wage and no objection to the testimony, which we find to be the case, the insufficiency of the evidence complained of was waived. It is

well settled, however, that the facts constituting a cause of action must be set forth fully and distinctly, and, if not proved as alleged, the foundation of the action falls and the plaintiff cannot recover. See Thomason v. Berry, 276 S. W. 185, by the Commission of Appeals.

It is evident in this case that the essential elements of appellee's weekly wage as defined by the Workmen's Compensation Law were not alleged. But if it be said that appellee's general allegation that his weekly wage was $50 per week is broad enough in the absence of objection to admit proof of the essentials of that allegation, his case yet fails because of an absence of evidence supporting such necessary elements within the purview of the statutes and of the cases that we have cited.

For the reasons noted, we conclude that the judgment below must be reversed and the cause remanded.